# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs November 18, 2003

## JAMES H. CRAWFORD V. STATE OF TENNESSEE

**Appeal from the Criminal Court for Sullivan County**
**No. C46,282    R. Jerry Beck, Judge**

---

**No. E2003-00097-CCA-R3-PC - Filed February 27, 2004**

---

On March 23, 1998, The petitioner pled guilty to six (6) counts of attempt to commit incest and six (6) counts of attempt to commit rape. He was sentenced to six (6) years for each count, all to be served concurrently to each other. On March 20, 2002, he filed a Petition for Post-Conviction Relief. He based his petition on two grounds of relief, attorney misrepresentation and DNA analysis under Tennessee Code Annotated section 40-30-403. The trial court dismissed the petition as time-barred on the attorney misrepresentation issue and as not meeting the statutory requirements on the DNA issue. The petitioner appeals the trial court's decision. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and ROBERT W. WEDEMEYER, JJ., joined.

Mark H. Toohey, Kingsport, Tennessee, for the appellant, James H. Crawford.

Paul G. Summers, Attorney General & Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Greeley Wells, District Attorney General; and James Goodwin, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

On March 23, 1998, The petitioner, James Harold Crawford, entered an <u>Alford</u> plea[1] to six (6) counts of attempted incest and six (6) counts of attempt to commit rape. He was sentenced as a Multiple Range 2 Offender to six (6) years for the attempt to commit incest convictions and eight (8) years for the attempt to commit rape convictions. These sentences were to run concurrently with each other, but consecutively to two other convictions that are not included in the record. The petitioner never filed an appeal of his sentence.

On March 20, 2002, he filed a Pro Se Petition for Relief from Conviction or Sentence. This was his first petition of this nature. He based his petition on two grounds for relief, attorney misrepresentation and DNA analysis under Tennessee Code Annotated section 40-30-403. On March 27, 2002, the trial court entered an order dismissing all of the petitioner's issues except for those relating to DNA testing. The trial court also stated that the petitioner needed to file an amended petition regarding the DNA testing to set out "with clarity his position, theory, and factual basis." The trial court gave the petitioner forty-five (45) days within which to file the amended petition.

The petitioner filed an amended petition. Regarding the DNA test, the petitioner stated the following:

> It was clearly established that Petitioner ejaculated and left sperm stains in the alleged crime scene, i.e., his house. Specifically: a comforter and quilt in state possession contain sperm stains. The State's theory was that said stains came from alleged unlawful sexual intercourse between Petitioner and Victim. Petitioner's theory was that (A) any sperm DNA belonging to him came from having lawful sexual intercourse with his wife at the time, (B) any other person's sperm DNA present in Petitioner's house and bedroom linens would prove that the Victim was sexually active - with other men - at the time she falsely accused him of sexual assault and (C) if the other man's sperm DNA came out of Petitioner's then-wife, it would provide her motive for encouraging false sexual allegations against Petitioner.
>
> The basis for Petitioner's allegation that the stains would show multiple males is (A) his personal review of the records RECENTLY obtained from his former attorneys

---

[1] This type of plea is named after <u>North Carolina v. Alford</u>, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), in which the United States Supreme Court discussed the right of an accused to plead guilty in his best interest while protesting his actual innocence.

. . . and the prelimeinary [sic] test results conducted by the State. (B) his personal reasonable knowledge that the victim was sexually active at the time she falsely accused him of sexual assault. Appointed counsel would be able to consult with Scientific Experts to verify Petitioner's basis. (C) Petitioner's personal knowledge that he did not unlawfully assault the Victim sexually.

The State's investigation did result in stains being found on two items from Petitioner and Victim's home, to-wit: Quilt and Comforter. Said items are currently in State's possession, custody and control.

After reviewing the petitioner's amended petition, the trial court entered an order on May 22, 2002 appointing counsel, directing the State to respond to the DNA issue and setting an on-record conference. After holding an on-record conference on December 17, 2002, the trial court dismissed the remaining issues in the petitioner's petition for post-conviction relief. The petitioner filed a Notice of Appeal on January 9, 2003.

The petitioner argues two issues in this appeal: (1) was it proper for the trial court to dismiss the portions of the Post-Conviction Petition without a hearing or appointing counsel, which were not related to DNA testing upon the grounds that the statute of limitations had expired? and (2) was it proper for the trial court to dismiss the petitioner's request for DNA testing pursuant to Tennessee Code Annotated section 40-30-401 without a hearing?

The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issue raised, we will afford those findings of fact the weight of a jury verdict, and this court is bound by the court's findings unless the evidence in the record preponderates against those findings. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997); Alley v. State, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. See State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

### Dismissal of Non-DNA Issues

The petitioner first argues that the trial court should not have dismissed the portions of his petition not related to the DNA issues without appointing counsel or conducting a hearing. The petitioner's counsel concedes that the petitioner's petition was well outside the one year statute of limitations. The trial court entered the petitioner's judgments of conviction on April 6, 1998. The judgments became final on May 6, 1998. The petitioner did not file his petition until March 20, 2002, almost four years later.

Tennessee Code Annotated section 40-30-202 sets out when a petitioner may petition for post-conviction relief. Tennessee Code Annotated section 40-30-202 states in part:

> (a) Except as provided in subsections (b) and (c), a person in custody under a sentence of a court of this state must petition for post-conviction relief under this part within one (1) year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one (1) year of the date on which the judgment became final, or consideration of such petition shall be barred. The statute of limitations shall not be tolled for any reason, including any tolling or saving provision otherwise available at law or equity. Time is of the essence of the right to file a petition for post-conviction relief or motion to reopen established by this chapter, and the one-year limitations period is an element of the right to file such an action and is a condition upon its exercise. Except as specifically provided in subsections (b) and (c), the right to file a petition for post-conviction relief or a motion to reopen under this chapter shall be extinguished upon the expiration of the limitations period.
> (b) No court shall have jurisdiction to consider a petition filed after such time unless:
> (1) the claim in the petition is based upon a final ruling of an appellate court establishing a constitutional right that was not recognized as existing at the time of trial, if retrospective application of that right is required. . . .
> (2) The claim in the petition is based upon new scientific evidence establishing that such petitioner is actually innocent of the offense or offenses for which the petitioner was convicted; or
> (3) The claim asserted in the petition seeks relief from a sentence that was enhanced because of a previous conviction and such conviction in the case in which the claim is asserted was not a guilty plea with an agreed sentence, and the previous conviction has been held subsequently invalid, . . . .

Tenn. Code Ann. § 40-30-202(a) & (b).[2]

In his original petition, the petitioner argued several grounds for post-conviction relief. He argues that his conviction was based on an unlawfully induced guilty plea, on the use of a coerced confession, on the use of evidence gained pursuant to an unconstitutional search and seizure and that he was denied the effective assistance of counsel. In his brief, his appellate counsel admits that he cannot find any legal authority to support the petitioner's claim of an unlawfully induced guilty plea or the use of a coerced confession to toll the statute of limitations. We agree with the petitioner's post-conviction counsel that the unlawfully-induced guilty plea and the coerced confession

---

[2]Tennessee Code Annotated section 40-30-202(c) discusses the filing of more than one petition for post-conviction relief. This is the petitioner's first petition, therefore, we do not include it in our analysis.

arguments do not fall within the exceptions listed by Tennessee Code Annotated section 40-30-202(b) to toll the statute of limitations.

However, the petitioner's appellate counsel argues that a hearing should be held on the petitioner's attorney misrepresentation argument. In his original petition, the petitioner argued that he was denied his fundamental constitutional right to present a defense because of attorney misrepresentation. He stated that his trial counsel "never explained to Petitioner that police wiretapping of his telephone conversation with the alleged victim was in violation of 18 U.S.C. 2511(1)(a) and such cassette tape recording was illegal and inadmissible." He also stated that his trial counsel did not present a motion to suppress the cassette tape under 18 U.S.C. 2511(1)(a) and 2515. For this reason, the petitioner believes that his trial counsel misled him to plead guilty by telling him that all constitutional challenges to the cassette tape had been presented.

The petitioner relies on Burford v. State, 845 S.W.2d 204 (Tenn. 1992), Sands v. State, 903 S.W.2d 297 (Tenn. 1995), and Williams v. State, 44 S.W.3d 464 (Tenn. 2001), to support his argument. In all three of these cases, our supreme court decided that the statute of limitations for post-conviction relief could be tolled in the factual situations presented. In Burford, the petitioner's sentence was being enhanced by previous convictions that had subsequently been declared invalid, but not in time for him to meet the statute of limitations for filing his post-conviction petition. Burford, 845 S.W.2d at 208. Our supreme court stated that because the petitioner was in a procedural trap, the petitioner's due process rights would be violated by not allowing a tolling of the statute of limitations and the filing of a post-conviction petition. Burford, 845 S.W.2d at 208-09.

In Sands v. State, 903 S.W.2d 297 (Tenn. 1995), our supreme court analyzed Burford and set out the basic rule derived from Burford and how to go about applying this rule in future cases. The supreme court stated:

> [I]t will be helpful to summarize the basic rule to be derived from Burford: that, in certain circumstances, due process prohibits the strict application of the post-conviction statute of limitations to bar a petitioner's claim when the grounds for relief, whether legal or factual, arise after the "final action of the highest state appellate court to which an appeal is taken" – or, in other words, when the grounds arise after the point at which the limitations period would normally have begun to run. In applying the Burford rule to specific factual situations, courts should utilize a three-step process: (1) determine when the limitations period would normally have begun to run; (2) determine whether grounds for relief actually arose after the limitations period would normally have commenced; and (3) if the grounds are "later-arising," determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim. In making this final determination, courts should carefully weigh the petitioner's liberty interest in "collaterally attacking constitutional violations occurring during the convictions process," Burford, 845 S.W.2d at 207, against the

State's interest in preventing the litigation of "stale and fraudulent claims." Id. at 208.

Sands, 903 S.W.2d at 301. However, after going through this analysis, the supreme court concluded that the statute of limitations had not been tolled in the Sands situation.

In Williams v. State, 44 S.W.3d 464 (Tenn. 2001), the supreme court again held that the statute of limitations was tolled by the factual and legal situation of the petitioner. In Williams, there was some dispute over whether the petitioner's trial counsel continued to represent him and how much the petitioner actually knew about the progress of his appeals. The supreme court stated that the question was whether the petitioner had been "misled to believe that [his trial] counsel was continuing the appeals process . . . ." Id. at 471. The supreme court remanded the case to the trial court so it could determine whether the statute must be tolled due to possible attorney misrepresentation. Id.

We now apply the Burford three-step analysis set out in Sands. The first step is to determine when the statute of limitations would normally begin to run. The judgments on the petitioner's guilty pleas became final on May 6, 1998. He did not appeal his sentence. Therefore, pursuant to Tennessee Code Annotated section 40-30-202(a), the statute of limitations began running on that date.

The next step is to determine whether the grounds for relief actually arose after the commencement of the statute of limitations. The petitioner argues that he was misled by his attorneys to plead guilty because his attorney did not successfully attack the alleged wire tap of a conversation between the victim and the petitioner. He states that his attorney never explained to him that police wire tapping of a telephone conversation is in violation of 18 U.S.C. § 2511(1)(a). 18 U.S.C. § 2511 was not amended between 1996 and 2002. Obviously, nothing arose in 18 U.S.C. § 2511 with regard to the petitioner's claim after the statute commenced. Therefore, our analysis ends with this second step, and the statute of limitations should not be tolled in the petitioner's situation.

The petitioner likens his situation to that in Williams where there was a potential misrepresentation by the petitioner's counsel. However, the facts are much different in this case. In Williams, the petitioner mistakenly believed that his counsel was attending to the petitioner's appeals; therefore, he did not make any efforts on his own in that regard. In this situation, the petitioner did not appeal, received his file in 2002 and believed that his trial counsel did not represent him properly. Our supreme court stated in Williams:

> [W]e are not holding that a petitioner may be excused from filing an untimely post-conviction petition as a result of counsel's negligence. Instead, the focus here is only upon trial and appellate counsel's alleged misrepresentation in failing to properly withdraw from representation and in failing to notify the petitioner that no application for permission to appeal would be filed in this Court.

Williams, 44 S.W.3d at 468, n.7. This appears to limit claims of attorney misrepresentation tolling the statute of limitations to times when counsel has made misrepresentations directly related to filing a defendant's appeal. That is clearly not the case here.

Therefore, the trial court was correct in summarily dismissing as time-barred the petitioner's post-conviction claims that did not relate to DNA analysis.

### Dismissal of DNA Issues

The petitioner also argues that the trial court erred in dismissing his post-conviction petition with regard to the DNA analysis issues without a hearing. The petitioner contends that it is possible that DNA of a third person, or the petitioner's ex-wife would also show up on the quilt and/or comforter tested before his plea. There are also statements from the trial court conference that implied the petitioner was told by a fellow inmate that the DNA sample could contain material that only a sample from an African-American would contain.

Tennessee Code Annotated section 40-30-401, et seq. is known as the "Post-Conviction DNA Analysis Act." Under Tennessee Code Annotated section 40-30-403, a petitioner may file a request for forensic DNA analysis in a petition for post-conviction relief at any time. Tennessee Code Annotated section 40-30-404 goes on to state:

> After notice to the prosecution and an opportunity to respond, the court shall order DNA analysis if it finds that:
> (1) A reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis;
> (2) The evidence is still in existence and in such a condition that DNA analysis may be conducted;
> (3) The evidence was never previously subjected to DNA analysis or was not subjected to the analysis that is now requested which could resolve an issue not resolved by previous analysis; and
> (4) The application for analysis is made for the purpose of demonstrating innocence and not to unreasonably delay the execution of sentence or administration of justice.

Tennessee Code Annotated section 40-30-404 applies when the exculpatory results would not have resulted in a prosecution or conviction. Tennessee Code Annotated section 40-30-405 is similar, but applies when the results would have resulted in a more favorable verdict or sentence. Tennessee Code Annotated section 40-30-405 states:

> After notice to the prosecution and an opportunity to respond, the court may order DNA analysis if it finds that:
> (1) A reasonable probability exists that analysis of the evidence will produce DNA results which would have rendered the petitioner's verdict or sentence more

favorable if the results had been available at the proceeding leading to the judgment of conviction;

(2) The evidence is still in existence and in such a condition that DNA analysis may be conducted;

(3) The evidence was never previously subjected to DNA analysis or was not subjected to the analysis that is now requested which could resolve an issue not resolved by previous analysis; and

(4) The application for analysis is made for the purpose of demonstrating innocence and not to unreasonably delay the execution of sentence or administration of justice.

The trial court did not hold a hearing, but rather a conference at which the petitioner was present. In his presentation to the trial court, the petitioner's attorney stated the following:

[I]f you'll recall, you gave me an opportunity to call and speak with the forensic scientist who performed this original DNA test to determine if the newer testing that's available today, the mitochondrial testing, might have some sort of an effect as to bolstering some of the Defendant's claims, or at least investigating some of the Defendant's claims in his Post Conviction Relief Petition.

If you'll recall, in that Petition, the Defendant has made one main allegation about the possibility of other people having had sex on this comforter that's involved. And in talking with Mr. - - - - well, there's two issues. The Defendant raised another issue with me just now, back in the jail, and I'll address that, too.

Judge, what really got this going was when the Defendant was in prison, or while he's been in prison, Dr. Ali was in the same area, and advised the Defendant, after looking at the DNA test, that the Defendant might want to look into this a little more because one of the sights [sic] that they picked here, what came out of - - - - the sperm that was located on the comforter, it contained material that only a person of the black race could have. It could not be a Caucasian. And that's what got Mr. Crawford's curiosity going here, obviously. But I have talked with Mr. Joe Minor, Special Agent Forensic Scientist in Nashville, who ran this original test, and I talked with him - - - - well, actually, Teresa Smith had talked with him, and then I talked with him personally today, and he said that the sights that they test - - - - they run their DNA tests on have nothing to do with race, period. You couldn't tell from that whether you're talking about a black person, white person, Asian, whatever. So that's - - - - I am satisfied that I cannot file any type of an Affidavit that would - - that would encourage your honor to have testing, further testing for that purpose.

. . . .

. . . The second thing that I asked Agent Minor was whether or not the new testing would be able to support my client's claim that although his DNA showed up

there, that it could be because he was having sex at this specific place with someone else other than the victim. And what Agent Minor had to say about that was a little more encouraging initially but I'll let Your Honor weigh this. Agent Minor told me that the RFLP testing that they used in 1995, when this test was run, was not capable of picking up secondary DNA that had been located at a sight [sic] earlier, as well as the mitochondrial tests that they do today can pick it up. The example that he gave me was if you have a female who has had sexual intercourse on one occasion with one man, and sometime later she had sexual intercourse with - - - - on another occasion with another man, in 1995 the RFLP method may not have picked up that first man's DNA; whereas now, in some circumstances, it can.

However, if you take that scenario and instead of looking at a woman's anatomy for sperm samples and you go outside of her anatomy and you're looking on a comforter for sperm samples, or in particular for the DNA of another woman, assuming that - - that Mr. Crawford had had sex with another woman on this comforter, he said that while it is possible that the new testing might come up with some minute remains of another woman's DNA, he says the more likely and the expected scenario would be that the numbers would simply increase against Mr. Crawford. Now, that's what I was told.

When ruling on the petitioner's post-conviction petition, the trial court stated:

I'm going to dismiss the DNA issue on, at best, it's speculative, highly speculative whether anything would be gained. Most of the Post Conviction matter is spoken in terms of conclusionary allegations evidently based, in part, under some fellow that's in the - - - - hadn't appeared before the Court, but purports to be a doctor, that says you can tell black from white and race. And just what I've got before me, I'm going to dismiss the DNA issue. I just don't see that there would be a gain indicating he would be able to prove his innocence if I granted it, further DNA testing, or as set out in the statute.

We agree with the trial court's assessment. Tennessee Code Annotated section 40-30-404 and 405 require a trial court to determine that additional DNA analysis with a favorable result would have altered the prosecution or conviction. The comforter and the quilt were tested in 1995 before the petitioner entered his Alford plea. The testing clearly showed that the petitioner's DNA was on the comforter or the quilt. We fail to see how additional testing proving that someone else's sperm was on the comforter or quilt would lessen the potential of his guilt, when his DNA was found in the original tests. In addition, based upon what the petitioner's counsel stated, it seems unlikely that additional tests would show the petitioner's sperm was present on the comforter from having sex with his ex-wife. According to what the forensic scientist told the petitioner's counsel it is unlikely that it would show his ex-wife's DNA and even more likely that it would show more of his DNA.

These facts do not lead to the reasonable probability required by the statute to allow further DNA testing and possible tolling of the statute of limitations. For this reason, we affirm the decision of the trial court.

_____

JERRY L. SMITH, JUDGE