IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 1, 2005

## RICHARD A. EMMITT v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 84-W-91     Steve R. Dozier, Judge**

_____

**No. M2004-00564-CCA-R3-PC - Filed March 16, 2005**

_____

The petitioner, Richard A. Emmitt, was convicted in 1984 of assault with intent to commit second degree murder, aggravated kidnapping, aggravated rape, armed robbery, and first degree burglary and received an effective sentence of 125 years.  His convictions were affirmed on direct appeal. The petitioner filed a petition for post-conviction relief on January 21, 2004, which the post-conviction court dismissed as untimely.  The petitioner appeals, claiming the statute of limitations was tolled.  Following our review, we affirm the dismissal of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Richard A. Emmitt, Pikeville, Tennessee, Pro Se.

Paul G. Summers, Attorney General and Reporter; Preston Shipp, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Pamela Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The facts of this case were set out in the opinion of this court on direct appeal affirming the petitioner's convictions:

These offenses arose from an episode that occurred in Nashville on or about January 12, 1984, when the [petitioner] and a codefendant, Dewayne Haynes, broke and entered the residence of 82-year-old Eloise Jordan and victimized her as will hereinafter be more fully detailed.  They procured from her a check in the sum of

$1,500.00 drawn on the Third National Bank and made payable to "Cash." We have only the appeal of Emmitt before us.

The [petitioner] introduced no evidence at trial. The State's evidence revealed that a second codefendant, Stuart Brown, presented the $1,500.00 check to a teller at the Third National Bank at approximately 8:30 A.M. on January 13, 1984. Brown produced a birth certificate but no driver's license for identification and the teller referred him to a bank officer, Bobbie Kincaid. Ms. Kincaid referred the matter to a bank investigator, Sam Neal.

Mr. Neal testified that Brown told him that another man had given the check to him and promised to pay him $100.00 for cashing it. The man told Brown that he had no identification. Brown pointed out the [petitioner], who was present in the bank, as the man who had hired him to cash the check.

When Mr. Neal interviewed the [petitioner], he was told that he (the [petitioner]) was given the check for work that he did "for this lady." When Neal expressed incredulity, the [petitioner] then stated that "the other man gave me the check." The "other man" was the codefendant, Haynes, who was also in the bank. Haynes told Neal that he had found the check on the street already made out. Neal turned the three men over to the police.

At approximately 10:30 A.M. on January 13, 1984, the morning of the attempt to cash the check at the bank, police officers went to the residence of the victim, Ms. Jordan. Officer Aubrey Turner testified that upon entering Ms. Jordan's apartment, he found that dresser-drawers had been pulled out and the contents dumped on the floor. The entire apartment was ransacked. A windowpane from a wooden back door was missing. Officer Turner was unable to locate Ms. Jordan.

The proof established that several detectives came to the apartment that morning to investigate. One of the detectives found Ms. Jordan inside a hall closet and initially thought her to be dead, although it was later discovered that she was not. When found, the victim was naked above her knees, her pants having been pulled down below her knees. She was bound with an electrical cord that had been placed in a position which made it impossible for her to move her hands or feet. Another cord ran from her hands to her feet and ankles. A third cord was tied around her arms and placed around her mouth and throat in such manner that any movement would have resulted in strangulation. Cloth had been stuffed into the victim's mouth. It was discovered that entry into the victim's apartment had been gained by the removal of a windowpane from the back door. The victim described her assailants to the officers as "a black guy and a blonde-headed guy."

The [petitioner] gave Detective Tim Allen a confession after waiving his Miranda rights. In the confession, the [petitioner] describes how he and "Slim", a black male (the defendant Dewayne Haynes), gained entry into the victim's apartment by removing a window from a back door at approximately 9:00 P.M. on the evening of January 12. The [petitioner] stated as follows:

> "He went in first. He grabbed her. I tied her hands, Slim tied her feet with a phone cord. Before we tied her up, he made her write some checks out. We both went through the house looking for money. Just before we left, we put her in the closet. We left through the back door. We left about eleven o'clock. We had one colored guy cash the check for us at the Third National Bank. The check was for $1,500.00. The bank sat us down and called the police.
>
> While she was in the bedroom, Slim pulled her pants down. I touched her pussy. I put my finger into the first joint. Slim spread her apart with his hands inside her."

After obtaining the written statement, an interview of the [petitioner] was recorded. The tape was played for the jury. In the recorded statement, the [petitioner] describes in detail the robbery of, and the attack upon, the victim. After tying the victim's hands and pulling down her pants, she was forced to write out checks. The [petitioner] claimed that Haynes had struck the victim in the face. The [petitioner] also acknowledged having placed his finger inside the victim's vagina because "we figured that maybe if she thought we were going to rape her, maybe she would tell us where the money was at." The victim had been beaten in the face and had also been tied before she wrote the checks. A portion of the oral statement is as follows:

> "DETECTIVE ALLEN: Okay. All right. She's still in the bedroom and she's written the checks out, what happens next?
>
> [THE PETITIONER]: Well, then he went--after she wrote the check out, he went and tied her mouth and then he was getting ready to *retie her back up with the telephone cord*, and I said no, I done put that around her hands, we'll just use a piece of cloth, to not tie her hands with a piece of cloth, and then he grabbed the back and I grabbed the front and picked her up and put her in the closet, then shut the closet and we both went out the door." (Emphasis supplied)

The [petitioner] stated that he did not know whether Haynes had raped Ms. Jordan but that he saw Haynes spread her vagina "pretty wide" with his hands. The victim could not scream because she had a sock in her mouth.

-3-

<u>State v. Richard A. Emmitt</u>, No. 85-105-III, 1986 WL 2309, at **1-2 (Tenn. Crim. App. Feb. 21, 1986).

On January 21, 2004, nearly eighteen years after his convictions had become final, the petitioner filed a *pro se* petition for post-conviction relief by "next friend," paralegal Dr. Donald C. McCary,[1] alleging, *inter alia*, ineffective assistance of counsel, that the State withheld exculpatory evidence at trial, and that the trial court erred in instructing the jury. Anticipating a response that his pleading was untimely, he asserted that the statute of limitations had been tolled because: (1) this court had established a constitutional right concerning jury instructions not recognized as existing at the time of trial; (2) he was not mentally competent to file a petition; and (3) trial counsel failed to appeal to the Tennessee Supreme Court the decision of this court affirming the petitioner's convictions.

On February 3, 2004, the post-conviction court entered an order summarily dismissing the petition on the grounds that it was barred by the one-year statute of limitations and the asserted grounds for relief did not fall within any of the exceptions to the limitation period. The petitioner then filed a timely appeal to this court, challenging the dismissal.

## ANALYSIS

During the twenty years between the petitioner's convictions and his seeking post-conviction relief, several post-conviction statutes were enacted and supplemented by subsequent statutes, as explained in <u>Seals v. State</u>, 23 S.W.3d 272, 275-76 (Tenn. 2000). The Post-Conviction Procedure Act of 1967 did not include a statute of limitations for seeking relief, allowing a petition to be filed "at any time after [a petitioner] ha[d] exhausted his appellate remedies and before the sentence ha[d] expired or had been fully satisfied." Tenn. Code Ann. § 40-30-102 (1982) (repealed 1986). However, the 1986 Post-Conviction Act established a three-year statute of limitations:

> A prisoner in custody under sentence of a court of this state must petition for post-conviction relief under this chapter within three (3) years of the date of the final action of the highest state appellate court to which an appeal is taken or consideration of such petition shall be barred.

Tenn. Code Ann. § 40-30-102 (1990) (repealed 1995). "To ensure that the constitutional requirement of reasonable notice was observed, the Tennessee Supreme Court ruled that those whose convictions were final before the effective date of the act had three years from July 1, 1986 to file a post-conviction claim." <u>Robert L. Smith, Jr. v. Judge Sterling Gray</u>, No. 01CO1-9610-CR-00450, 1997 WL 672664, at *1 (Tenn. Crim. App. Oct. 30, 1997) (citing <u>Abston v. State</u>, 749 S.W.2d 487, 488 (Tenn. Crim. App. 1988), <u>perm. to appeal denied</u> (Tenn. Mar. 16, 1998). Thus, in the present

---

[1] "Dr." McCary is a fellow inmate of the petitioner. In an affidavit attached to the petition, McCary states that his title derives from his honorary doctorate from "Covington College."

-4-

matter, because the petitioner's convictions were affirmed by this court on February 21, 1986, and no application for permission to appeal to the state supreme court was filed, the statute of limitations for seeking post-conviction relief as to the petitioner's sentences began to run on July 1, 1986, and expired on July 1, 1989. The petition was filed on January 21, 2004, nearly fifteen years after the statute had run.

In 1995, the legislature enacted the current post-conviction relief act, effective May 10, 1995, which provides that post-conviction petitions are untimely unless they are filed "within one (1) year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one (1) year of the date on which the judgment became final . . . ." Tenn. Code Ann. § 40-30-102(a) (2003). Since the statute of limitations applicable to the petitioner's post-conviction claims had expired before the enactment of the 1995 Post-Conviction Procedure Act, that subsequent act did not give him additional time within which to file such claims. See Carter v. State, 952 S.W.2d 417, 419 (Tenn. 1997).

The petitioner claims three bases for the tolling of the statute of limitations, which we will consider. First, he argues that the statute of limitations should be tolled pursuant to an exception in the 1995 Post-Conviction Procedure Act, codified at Tennessee Code Annotated section 40-30-102(b)(1), providing that untimely post-conviction petitions may be considered if "the petition is based upon a final ruling of an appellate court establishing a constitutional right that was not recognized as existing at the time of trial, if retrospective application of that right is required." Seeking to apply this principle and relying on our opinion in State v. Robert F. Smythers, No. E2001-02806-CCA-R3-CD, 2003 WL 21145428 (Tenn. Crim. App. May 19, 2003), perm. to appeal denied (Tenn. Oct. 27, 2003), the petitioner argues that the trial court's jury instructions in his 1984 trial were incomplete because they failed to define or include the element of "knowing" and that his right to such an instruction is a newly recognized constitutional right.

An element of the offense of second degree murder, as it is currently codified at Tennessee Code Annotated section 39-13-210(a)(1) (2003), is that the defendant acted "knowingly." In addition, voluntary manslaughter requires that a defendant's conduct be "intentional or knowing." Tenn. Code Ann. § 39-13-211(a) (2003). At the time of the petitioner's 1984 trial, however, second degree murder, as defined in Tennessee Code Annotated section 39-2-211 (repealed 1989), did not require that the petitioner act "knowing" or "knowingly," but instead that he act willfully and with malice. See Farr v. State, 591 S.W.2d 449, 451 (Tenn. Crim. App. 1979). Additionally, at the time of his trial, voluntary manslaughter was defined as "the unlawful and intentional killing by one of another, without malice, but upon a sudden heat or passion produced by provocation adequate to obscure the reason of an ordinary man." Smith v. State, 212 Tenn. 510, 515, 370 S.W.2d 543, 545 (1963); Tenn. Code Ann. § 39-2-221 (repealed 1989). Thus, what he views as newly recognized constitutional rights are, in fact, merely different jury instructions because of redefinitions of criminal offenses. Accordingly, his first basis for tolling the statute of limitations is without merit.

As a second basis, he asserts that he was mentally incompetent, both during and after his trial, and thus unable to timely file a petition for post-conviction relief.

The 1995 Post-Conviction Procedure Act contains a specific anti-tolling statute. See Tenn. Code Ann. § 40-30-102(a) (2003) (providing that "[t]he statute of limitations shall not be tolled for any reason, including any tolling or saving provision otherwise available at law or equity"). However, in Seals, 23 S.W.3d at 279, our supreme court recognized that due process requires that the post-conviction statute of limitations be tolled during periods of a petitioner's mental incompetency. In State v. Nix, 40 S.W.3d 459, 463 (Tenn. 2001), our supreme court, addressing the issue of what specific standard of mental incompetence must be satisfied to require tolling, explained that "due process requires tolling of the post-conviction statute of limitations only if a petitioner shows that he is unable either to manage his personal affairs or to understand his legal rights and liabilities." Id. The Nix court stressed that the burden is on the petitioner to include specific factual allegations in his petition to support his claim of mental incompetence:

> We emphasize that to make a prima facie showing of incompetence requiring tolling of the limitations period, a post-conviction petition must include specific factual allegations that demonstrate the petitioner's inability to manage his personal affairs or understand his legal rights and liabilities. Unsupported, conclusory, or general allegations of mental illness will not be sufficient to require tolling and prevent summary dismissal under Tenn. Code Ann. § 40-30-206(b) & (f). *The required prima facie showing may be satisfied by attaching to the petition affidavits, depositions, medical reports, or other credible evidence that contain specific factual allegations showing the petitioner's incompetence*. While affidavits and depositions of mental health professionals may be utilized, they are not essential, and a petitioner may rely upon affidavits and depositions from family members, prison officials, attorneys, or any other person who has knowledge of facts that demonstrate either the petitioner's inability to manage his personal affairs or the petitioner's inability to understand his legal rights and liabilities.

Id. at 464 (citations omitted) (emphasis added).

If the petitioner was competent for a total of three years from February 21, 1986 to May 9, 1995, the three-year statue of limitations of the 1989 Act expired; and the petition was not timely. See Alvin L. Smith v. State, No. 01C01-9808-CC-00343, 1999 WL 810229, at *2 (Tenn. Crim. App. Oct. 12, 1999) (explaining that a post-conviction petition was not timely if petitioner was competent for a total of either three years or one year, depending on whether the three-year statute of limitations under the 1989 Act, or the one-year statue of limitations under the 1995 Act, applied). Accordingly, the petition in this appeal was timely only if the petitioner was not competent for a total of three years from February 21, 1986 to May 9, 1995 *and* was not competent for a total of one year from May 10, 1995 to January 21, 2004. See id.

As proof of mental incompetence, the petitioner asserted that he has a seventh grade education and an IQ of 55, that he was verbally and physically abused by his alcoholic father when he was a child, and that he has never had a driver's license or a bank account as an adult. He also claims that "[a]ll of his life he has suffered from apparent psychological impairment and an unsound

mind." However, the only "proof" in the record of any of these claims is the affidavit of McCary, the "next friend" and fellow inmate of the petitioner.[2] The record does not contain affidavits or depositions from family members, mental health professionals, prison officials, or attorneys. Additionally, it does not include medical reports or test results which would show any incompetence on the part of the petitioner, and there is no indication of a history of treatment or confinement in any sort of mental health facility. We cannot conclude that the affidavit of a fellow inmate is the type of credible evidence envisioned in Nix by our supreme court. We note that in our opinion on direct appeal, contrary to the petitioner's claim in this proceeding that he has an IQ of 55, we stated that while the petitioner was a "slow learner," "[t]here was also evidence that the [petitioner] had scored from 70 to 85 on I.Q. tests." Richard A. Emmitt, 1986 WL 2309, at *10. Accordingly, this basis for tolling the statute of limitations, likewise, is without merit.

As his final argument for tolling the statute of limitations, the petitioner asserts that counsel failed to seek application for permission to appeal this court's decision affirming his convictions to the Tennessee Supreme Court. In his petition, he alleged that counsel did not "make petitioner aware he could appeal" the decision of this court to the supreme court and "did not withdraw as his counsel" pursuant to Tennessee Supreme Court Rule 14, and this inaction tolled the statute of limitations for filing a post-conviction petition. In the alternative, he argues that he should be granted a delayed appeal of his convictions to the supreme court.

The petitioner's convictions became final in 1986 and he did not seek post-conviction relief, including asking for the filing of an application for permission to appeal to the Tennessee Supreme Court, until 2004, some eighteen years later. As far as we can tell from his pleadings, this is the first time he has expressed a desire to file an application for permission to appeal. He does not explain why only now does he wish to do so.

In Williams v. State, 44 S.W.3d 464 (Tenn. 2001), a majority of our supreme court concluded that "due process considerations may have tolled the limitations period" for filing a post-conviction petition when the petitioner's appointed counsel misled the petitioner into believing that counsel was continuing the direct appeal process. Id. at 471. Counsel's actions must be more than mere negligence and must rise to the level of misrepresentation before relief from the statute of limitations will be granted. Id. at 468 n.7. In Wallace v. State, 121 S.W.3d 652, 656 (Tenn. 2003), our supreme court explained that a defendant may receive a delayed appeal where he was denied the effective assistance of counsel.

Unlike the situation in Williams, where counsel misled the petitioner to believe he was continuing the appeal process, or Wallace, in which counsel had neglected to file a motion for new trial, the petitioner in the present appeal has waited eighteen years to claim that he wishes to appeal this matter to our supreme court. There is no indication that he was under the mistaken impression

---

[2]The events resulting in the incarceration of inmate McCary are set out in State v. McCary, 119 S.W.3d 226 (Tenn. Crim. App. 2003), which we note because he submitted his affidavit intended to establish the petitioner's alleged mental disabilities.

that trial counsel continued to represent him after this court affirmed his convictions, and the appeal simply was taking nearly two decades. In <u>Crawford v. State</u>, 151 S.W.3d 179 (Tenn. Crim. App.), <u>perm. to appeal denied</u> (Tenn. 2004), we interpreted <u>Williams</u> as "limit[ing] claims of attorney misrepresentation tolling the statute of limitations to times when counsel has made misrepresentations directly related to filing a defendant's appeal." <u>Id.</u> at 184. We agree with the post-conviction court that the petitioner's pleadings are insufficient in this regard, as well.

## **CONCLUSION**

We affirm the post-conviction court's dismissal of the petition as time-barred.

_____
ALAN E. GLENN, JUDGE