IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned On Briefs January 18, 2012

**HENRY DEQUAN RHODES v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Wilson County**
**No. 97-0334   David Earl Durham, Judge**

_____

**No.  M2011-01124-CCA-R3-PC - Filed November 13, 2012**

_____

Petitioner was convicted in 1998 of one count of first degree murder in Wilson County.  He was sentenced to life in prison.  Petitioner was unsuccessful on appeal.  *State v. Henry Dequan Rhodes*, No. M1999-959-CCA-R3-CD, 2000 WL 264327, at \*1 (Tenn. Crim. App., at Nashville, Mar. 10, 2000), *perm. app. denied* (Tenn. Oct. 30, 2000).  On March 16, 2011, Petitioner filed a petition for post-conviction relief.  The post-conviction court summarily dismissed the petition.  On appeal, Petitioner argues that the post-conviction court erred in its dismissal of his petition.  We conclude that the post-conviction court did not err because the decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004), did not create a new constitutional right that was required to be retroactively applied;  Petitioner did not provide adequate support for his argument that the statute of limitations had been tolled based upon the violation of a due process right; and Petitioner did not meet the requirements set out to present a writ of error coram nobis to the court.  Therefore, we affirm the post-conviction court's summary dismissal of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and CAMILLE R. MCMULLEN, JJ., joined.

F. D. Gibson, III, Maryville, Tennessee, and Melanie Bean, Lebanon, Tennessee, for the appellant, Henry Dequan Rhodes.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Tom P. Thompson, District Attorney General; and Bobby Hibbett, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Factual Background*

The Wilson County Grand Jury indicted Petitioner for one count of first degree felony murder committed in the perpetration of aggravated child abuse in connection with the death of his girlfriend's sixteen-month-old child. *Henry Dequan Rhodes*, 2000 WL 264327, at *1. He was convicted by a jury of the charged offense and was sentenced to life imprisonment on March 17, 1998. *Id.* On appeal, Petitioner argued that the evidence was insufficient to support his conviction and that the trial court erroneously admitted photographs into evidence. This Court found no error, and the judgment was affirmed. *Id.*

On March 16, 2011, Petitioner filed a petition for post-conviction relief. The post-conviction court summarily dismissed the petition stating that the petition was barred by the statute of limitations and that the petition was "not based upon a final ruling of an Appellate Court establishing a constitutional right which did not exist at the time of the Supreme Court's final action, nor is it based upon new scientific evidence establishing Petitioner is innocent of the offense."

Petitioner appeals the summary dismissal of his petition.

## ANALYSIS

Petitioner argues that the post-conviction court erred in dismissing his petition: (1) because *Apprendi* and *Blakely* created a new constitutional right; (2) without a hearing because he presented a colorable claim; and (3) because the post-conviction court did not address Petitioner's petition for writ of error coram nobis which was included in the body of his petition for post-conviction relief.

Under the Post-Conviction Procedure Act, a petition for post-conviction relief must be filed within one year of the date of the final action of the highest state appellate court to which an appeal is taken, or if no appeal is taken, within one year of the date on which the judgment became final. T.C.A. § 40-30-102(a) (2010). Unless one of the enumerated exceptions applies, a court does not have jurisdiction to consider an untimely petition. *See* T.C.A. § 40-30-102(b). Tennessee Code Annotated section 40-30-102(b) lists the exceptions to the statute of limitations as situations where: (1) "[t]he claim in the petition is based upon a final ruling of an appellate court establishing a constitutional right that was not recognized as existing at the time of trial, if retrospective application of that right is required;" (2) "[t]he claim in the petition is based upon new scientific evidence establishing that the petitioner is

actually innocent of the offense or offenses for which the petitioner was convicted;" or (3) "[t]he claim asserted in the petition seeks relief from a sentence that was enhanced because of a previous conviction and the conviction in the case in which the claim is asserted was not a guilty plea with an agreed sentence, and the previous conviction has subsequently been held to be invalid."

In the present case, the post-conviction court properly determined that the petition was filed more than one year after the date of the final action by the highest court to which an appeal was taken and thus well outside the statute of limitations. Our supreme court denied permission to appeal on October 30, 2000. Therefore, Petitioner had until October 30, 2001, to file a petition for post-conviction relief. Petitioner filed his petition on March 16, 2011. This was well outside the one-year statute of limitations.

### *Apprendi* and *Blakely*

Petitioner argues that the holdings in *Apprendi* and *Blakely*, authored by the United States Supreme Court, established a new constitutional right that should be applied retroactively and would meet the first exception set out in Tennessee Code Annotated section 40-30-102(b)(1).

This Court has previously determined that *Apprendi* does not apply retroactively so as to warrant collateral relief. This Court has held:

> A "case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government [or] . . . if the result was not dictated by precedent existing at the time the defendant's conviction became final." *Teague v. Lane*, 489 U.S. 288, 301, 109 S. Ct. 1060, 1070 (1989) (citations omitted); *see also Van Tran v. State*, 66 S.W.3d 790, 810-11 (Tenn. 2001). Courts addressing whether *Apprendi* sets forth a new rule have held that, in *Apprendi*, "the Supreme Court announced a new constitutional rule of criminal procedure by holding that 'other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury, and proved beyond a reasonable doubt.'" *In re Clemmons*, 259 F.3d 489, 491 (6th Cir. 2001) (quoting *Apprendi*, 530 U.S. at 491, 120 S. Ct. at 2362-63); *see also United States v. Sanders*, 247 F.3d 139, 147 (4th Cir. 2001) (holding that "*Apprendi* is certainly a new rule of criminal procedure"); *United States v. Moss*, 252 F.3d 993, 997 (8th Cir. 2001) (holding that "*Apprendi* is obviously a 'new rule'"). Because *Apprendi* sets forth a new constitutional rule of

criminal procedure, the fundamental question becomes whether *Apprendi* applies retroactively to the petitioner's case.

New rules of constitutional criminal procedure are generally not applied retroactively on collateral review. *Teague*, 489 U.S. at 310. However, this general rule is subject to two exceptions. *Id.* "First, a new rule should be applied retroactively if it places 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.'" *Id.* at 307. Second, a new rule should be applied retroactively if it is a "watershed rule of criminal procedure, . . . which implicates both the accuracy and fundamental fairness of criminal proceedings." *Moss*, 252 F.3d at 998 (citing *Teague*, 489 U.S. at 312). Clearly, the first exception is not applicable to the petitioner's claim, because the rule set forth in *Apprendi* "did not decriminalize any class of conduct or prohibit a certain category of punishment for a class of defendants." *McCoy v. United States*, 266 F.3d 1245, 1256 (11th Cir. 2001). Furthermore, the great weight of authority holds that *Apprendi* is not the type of watershed rule of criminal procedure that qualifies for retroactive application under the second exception. *Dukes v. United States*, 255 F.3d 912, 913 (8th Cir. 2001) (holding that "*Apprendi* presents a new rule of constitutional law that is not of 'watershed' magnitude and, consequently, petitioners may not raise *Apprendi* claims on collateral review"); *Sanders*, 247 F.3d at 151 (holding that "the new rule announced in *Apprendi* does not rise to the level of a watershed rule of criminal procedure which 'alters our understanding of the bedrock elements essential to the fairness of a proceeding'"); *McCoy*, 266 F.3d at 1257 (agreeing with the other circuits that "*Apprendi* is not sufficiently fundamental to fall within *Teague's* second exception"). Accordingly, we conclude that the new constitutional rule of criminal procedure announced in *Apprendi* does not apply retroactively on collateral review.

*William Steve Greenup v. State*, No. W2001-01764-CCA-R3-PC, 2002 WL 31246136, at *2-3 (Tenn. Crim. App., at Jackson, Oct. 2, 2002).

In addition, our courts have repeatedly held that *Apprendi, Blakely*, and their progeny did not establish a new rule of constitutional law which was entitled to retroactive application on collateral review. *Travis J. Woods v. State*, No. E2007-02379-CCA-R3-PC, 2009 WL 723522 at *14-15 (Tenn. Crim. App., at Knoxville, Mar. 18, 2009), *perm. app. denied* (Tenn. Aug. 17, 2009); *Ira Ishamael Muhammad v. State*, No. E2007-00748-CCA-R3-PC, 2009 WL 400633, at *5 (Tenn. Crim. App., at Knoxville, Feb. 18, 2009), *perm. app. denied* (Tenn.

Aug. 17, 2009); *Ortega Wiltz v. State*, No. M2006-02740-CCA-R3-PC, 2008 WL 1850796, at *9 (Tenn. Crim. App., at Nashville, Apr. 25, 2008), *perm. app. denied* (Tenn. Oct. 27, 2008); *Timothy R. Bowles v. State*, No. M2006-01685-CCA-R3-HC, 2007 WL 1266594, at *3 (Tenn. Crim. App., at Nashville, May 1, 2007).

Therefore, Petitioner's argument with regard to an exception to the statute of limitations based upon the decisions in *Apprendi* and *Blakely* must fail.

### Due Process Argument

Appellant also argues that the post-conviction court erred in summarily dismissing his petition because he presented a colorable claim. This portion of his brief consists of an argument regarding an alleged violation of the requirements set out under *Brady v. Maryland*, 373 U.S. 83 (1963), when the State allegedly failed to disclose "impeachment material on Dr. [Charles] Harlan that was available and under the control of the State or a governmental agency." The actual issue is whether the *Brady* issue alleged by Petitioner is sufficient to toll the statute of limitations.

In addition to the exceptions set out above in Tennessee Code Annotated section 40-30-102(b), the courts in this State have found that due process concerns can toll the statute of limitations in certain factual situations. *See Williams v. State*, 44 S.W.3d 464 (Tenn. 2001); *Sands v. State*, 903 S.W.2d 297 (Tenn. 1995); *Burford v. State*, 845 S.W.2d 204 (Tenn. 1992).

In *Williams v. State*, 44 S.W.3d 464 (Tenn. 2001), a more recent in a line of cases including *Burford v. State*, 845 S.W.2d 204 (Tenn. 1992), and *Sands v. State*, 903 S.W.2d 297 (Tenn. 1995), the Tennessee Supreme Court analyzed a situation where due process limitations toll the statute of limitations. In *Burford*, the petitioner's sentence was enhanced by previous convictions that had subsequently been declared invalid, but not invalidated in time for him to meet the statute of limitations for filing his post-conviction petition. *Burford*, 845 S.W.2d at 208. Our supreme court stated that because the petitioner was in a procedural trap, the petitioner's due process rights would be violated by not allowing a tolling of the statute of limitations and the filing of a post-conviction petition. *Burford*, 845 S.W.2d at 208-09.

In *Sands*, our supreme court analyzed *Burford* and set out the basic rule derived from *Burford* and how to go about applying this rule in future cases. The supreme court stated:

[I]t will be helpful to summarize the basic rule to be derived from *Burford*: that, in certain circumstances, due process prohibits the strict application of the post-conviction statute of limitations to bar a petitioner's claim when the grounds for relief, whether legal or factual, arise after the "final action of the highest state appellate court to which an appeal is taken"-or, in other words, when the grounds arise after the point at which the limitations period would normally have begun to run. In applying the *Burford* rule to specific factual situations, courts should utilize a three-step process: (1) determine when the limitations period would normally have begun to run; (2) determine whether grounds for relief actually arose after the limitations period would normally have commenced; and (3) if the grounds are "later-arising," determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim. In making this final determination, courts should carefully weigh the petitioner's liberty interest in "collaterally attacking constitutional violations occurring during the conviction process," *Burford*, 845 S.W.2d at 207, against the State's interest in preventing the litigation of "stale and fraudulent claims." *Id.* at 208.

*Sands*, 903 S.W.2d at 301 (footnote omitted). However, after going through this analysis, the supreme court concluded that the statute of limitations had not been tolled in the *Sands* situation.

In *Williams v. State*, 44 S.W.3d 464 (Tenn. 2001), the supreme court again held that the statute of limitations was tolled by the factual and legal situation of the petitioner. In *Williams*, there was some dispute over whether the petitioner's trial counsel continued to represent him and how much the petitioner actually knew about the progress of his appeals. The supreme court stated that the question was whether the petitioner had been "misled to believe that [his trial] counsel was continuing the appeals process . . . ." *Id.* at 471. The supreme court remanded the case to the trial court for it to determine whether the statute must be tolled due to possible attorney misrepresentation. *Id.* In other words, *Williams* "appears to limit claims of attorney misrepresentation tolling the statute of limitations to times when counsel has made misrepresentations directly related to filing a defendant's appeal." *Crawford v. State*, 151 S.W.3d 179, 184 (Tenn. Crim. App. 2004).

Petitioner argues that the State violated the provisions of *Brady* by not turning over impeachment material that was in the hands of the Tennessee Bureau of Investigation ("TBI") at the time of his prosecution in the mid-1990's. Initially we point out that Petitioner makes no allegations with regard to any misconduct on the part of Dr. Harlan when he

completed the autopsy on the victim for whose death the Petitioner was convicted. He instead asserts that the alleged misconduct of Dr. Harlan regarding other autopsies should have been available to impeach Dr. Harlan's credibility.

Petitioner filed multiple documents regarding various investigations into Dr. Harlan's office practices and allegations of unprofessional conduct. Petitioner even argues that three of the cases in the files were from Wilson County and involved the district attorney's office in that county. What Petitioner does not include in his argument is an allegation as to when he discovered this information and how he became aware of the controversy surrounding Dr. Harlan. Dr. Harlan's issues were well-publicized in this State as evidenced by the newspaper articles from the time period in question which Petitioner filed in the post-conviction court. It would appear that there would have been knowledge of the possibility of Dr. Harlan's misconduct.

This Court was faced with a similar issue in *Phyllis Ann McBride v. State*, No. M2009-01467-CCA-R3-PC, 2010 WL 2134157 (Tenn. Crim. App., at Nashville, May 27, 2010), *perm. app. denied* (Tenn. Nov. 15, 2010), where the petitioner argued that new evidence of Dr. Harlan's misconduct constituted a *Brady* violation and that her petition for post-conviction relief should have been re-opened. 2010 WL 2134157, at *4. In *Phyllis Ann McBride*, this Court set out the facts that the Board of Medical Examiners investigated Dr. Harlan from May 2003 to April 2005, and eventually permanently revoked his medical license in May 2005. *Id.* at *2. However, the petitioner did not file her petition for post conviction relief until August 2009. This Court concluded the petitioner had not exercised due diligence in the discovery of the revocation of Dr. Harlan's license and declined to toll the applicable statute of limitations. *Id*.

Therefore, we conclude that Petitioner at the least should have filed his petition based on this issue within one year of May 2005. Petitioner did not file his petition until May 2011, and he has not offered any satisfactory explanation of his failure to do so. In addition, we point out this petition was filed just two months shy of a full thirteen years since he was convicted in 1998. As stated above, we must also balance the interest of the State in preventing the litigation of stale and fraudulent claims. *Sands*, 903 S.W.2d at 301. With regard to this particular factual situation, we conclude that the statute of limitations has not been tolled. Therefore, the post-conviction court was correct to dismiss the petition as time-barred.

## Writ of Error Coram Nobis

Petitioner also argues that the post-conviction court erred in dismissing his petition for writ of error coram nobis. The State argues that Petitioner did not file a separate petition

for writ of error coram nobis but instead included it as a paragraph in his petition for post-conviction relief and cannot be considered on that basis.

Relief by petition for writ of error coram nobis is provided for in Tennessee Code Annotated section 40-26-105. That statute provides, in pertinent part:

> (b) The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for a new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.
>
> (c) The issue shall be tried by the court without the intervention of a jury, and if the decision be in favor of the petitioner, the judgment complained of shall be set aside and the defendant shall be granted a new trial in that cause.

T.C.A. § 40-26-105 (b), (c). The writ of error coram nobis is an "extraordinary procedural remedy," filling only a "slight gap into which few cases fall." *State v. Mixon* , 983 S.W.2d 661, 672 (Tenn. 1999). The "purpose of this remedy 'is to bring to the attention of the trial court some fact unknown to the court which if known would have resulted in a different judgment.'" *State v. Hart*, 911 S.W.2d 371, 374 (Tenn. Crim. App. 1995) (quoting *State ex rel. Carlson v. State*, 407 S.W.2d 165, 167 (Tenn. 1996)). The decision to grant or deny a petition for writ of error coram nobis rests within the sound discretion of the trial court. *Teague v. State*, 772 S.W.2d 915, 921 (Tenn. Crim. App. 1988), *overruled on other grounds by Mixon*, 983 S.W.2d at 671 n.13.

A petition for writ of error coram nobis must relate: (1) the grounds and the nature of the newly discovered evidence; (2) why the admissibility of the newly discovered evidence may have resulted in a different judgment had the evidence been admitted at the previous trial; (3) the petitioner was without fault in failing to present the newly discovered evidence at the appropriate time; and (4) the relief sought by the petitioner. *Freshwater v. State*, 160 S.W.3d 548, 553 (Tenn. Crim. App. 2004), *perm. app. denied* (Tenn. Jan. 31, 2005); *Hart*, 911 S.W.2d at 374-75. Our supreme court has held that the following analysis applies to the determination of whether a petition can be successful on a petition for a writ of error coram

-8-

nobis, "'whether a reasonable basis exists for concluding that had the evidence been presented at trial, the result of the proceedings might have been different.'" *State v. Vasques*, 221 S.W.3d 514, 526 (Tenn. 2007) (quoting *State v. Vasques*, No. M2004-00166-CCA-R3-CD, 2005 WL 2477530 at *13 (Tenn. Crim. App. at Nashville, Oct. 7, 2005), *aff'd*, *Vasques*, 221 S.W.3d 526.

We initially point out that to say that Petitioner's writ of error coram nobis is inartfully drawn is an understatement. As stated above, the writ is merely included as a portion of Petitioner's petition for post-conviction relief. Our supreme court has stated that the inclusion of a writ of error coram nobis as part of a petition for post-conviction relief constitutes a procedure that is both "unorthodox and unconventional." *Teague*, 772 S.W.2d at 922. After his argument with regard his petition for post-conviction, Petitioner states, "The Petitioner also requests the Court to review this case under the statutory right of Writ of Error Coram Nobis . . . ." Apparently, Petitioner is under the impression that a writ of error coram nobis is merely an alternate argument to a petition for post-conviction relief.

Furthermore, the portion of the petition following the request for "review under the statutory right of Writ of Error Coram Nobis," is somewhat confusing. Initially, Petitioner parrots the language of the statute stating that "the Court has the authority to hear this case under T.C.A. § 27-1-101 . . . ." He argues several grounds including the rehashing of the *Brady* issue regarding Dr. Harlan, that his trial counsel was ineffective, and multiple issues regarding the jury instructions. The writ of error coram nobis can only concern newly discovered evidence. *Vasques*, 221 S.W.3d at 526. The ineffectiveness of his trial counsel and the jury instructions do not constitute newly discovered evidence.

The post-conviction court did not specifically address Petitioner's request for review of the issues as a writ of error coram nobis. However, we conclude that Petitioner did not meet the procedural requirements. Because, while he set out that the information in question should have been available to impeach Dr. Harlan, Petitioner failed to include why the impeachment evidence would have resulted in a different outcome at trial.

Therefore, we conclude that there was no error on the part of the post-conviction court.

## CONCLUSION

For the foregoing reasons, we affirm the summary dismissal of the petition.


_____
JERRY L. SMITH, JUDGE